# Exhibit B



May 4, 2017

**VIA ELECTRONIC MAIL**

FOIA Officer
Office of Management and Budget
725 17th Street NW
Washington, DC 20503
OMBFOIA@omb.eop.gov

Re: Expedited Freedom of Information Act Request

Dear Freedom of Information Act Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 et seq. and Office of Management and Budget (OMB) implementing regulations, 5 C.F.R. § 1303, American Oversight makes the following request for records.

On Monday, March 6, 2017, Republicans in the House of Representatives introduced their proposal to "repeal and replace" the Affordable Care Act (ACA), a set of bills collectively known as the American Health Care Act (AHCA).[1] However, on March 24, 2017, House Republican leaders pulled the AHCA after failing to gather enough support to pass the proposal.[2] At that time, President Trump stated that he believed the best path forward would be to let the ACA "explode," so that Democrats would be motivated to negotiate for a new health care deal.[3] Since then, there have been numerous reports about plans by the Trump administration to take administrative actions that would affect the operation of the ACA.[4] Additionally, the Trump administration

---

[1] Amy Goldstein et al., *House Republicans Release Long-Awaited Plan to Replace Obamacare*, WASH. POST, Mar. 6, 2017, https://www.washingtonpost.com/powerpost/new-details-emerge-on-gop-plans-to-repeal-and-replace-obamacare/2017/03/06/04751e3e-028f-11e7-ad5b-d22680e18d10_story.html?utm_term=.dc0109d81374.
[2] Mike DeBonis et al., *GOP Health-Care Bill: House Republican Leaders Abruptly Pull Their Rewrite of the Nation's Health-Care Law*, WASH. POST, Mar. 24, 2017, https://www.washingtonpost.com/powerpost/house-leaders-prepare-to-vote-friday-on-health-care-reform/2017/03/24/736f1cd6-1081-11e7-9d5a-a83e627dc120_story.html?hpid=hp_rhp-banner-main_housevote715a-banner%3Ahomepage%2Fstory&utm_term=.a8fe3ca41561.
[3] DeBonis et al., *supra* note 2.
[4] *See, e.g.*, Stephanie Armour, *With GOP Plan Dead, Trump Weighs Other Ways to Reshape Health Care*, WALL ST. J. (Mar. 25, 2017, 1:33 PM), https://www.wsj.com/articles/with-gop-plan-dead-trump-eyes-other-ways-to-reshape-health-care-1490434201; Dan Diamond & Josh Dawsey, *Trump Dangles Obamacare Payments to Force Dems to the Table*, POLITICO (Apr. 12, 2017, 8:18 PM), http://www.politico.com/story/2017/04/donald-trump-obamacare-subsidies-negotiate-237174; Benjamin Siegel, *Trump Threatens to Undermine Obamacare to Get Democrats to*

---

 1030 15th Street NW, Suite B255, Washington, DC 20005   |   AmericanOversight.org

reportedly delivered a letter to Congressional Republicans on March 23, 2017, that outlined ACA regulations the administration could repeal on its own, without Congress, and other administrative actions that the administration might take that would affect the implementation of the ACA. Given that OMB and its director, Mick Mulvaney, were heavily involved in the initial AHCA proposal, there is reason to believe that OMB may have been involved in the preparation of the letter or its presentation to Congress. The public deserves to know what steps the administration is taking to meet its obligations to implement the current health care law, as well as what role industry groups are having in that process.

### Requested Records

American Oversight requests that OMB produce the following within twenty business days and seeks expedited review of this request for the reasons identified below:

1. A copy of any letter or memorandum sent on or about March 23, 2017 to Congressional Republicans outlining potential regulatory actions related to the Affordable Care Act. The requested record was referenced in an April 4, 2017 letter from 21 Senators to Secretary Tom Price.[5]

2. Any other communications from OMB to any member of Congress or congressional staff concerning potential administrative actions relating to implementation of the Affordable Care Act. Please provide all responsive records from March 6, 2017, to the date the search is conducted.

In addition to the records requested above, American Oversight also requests records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or

---

*Negotiate*, ABC NEWS (Apr. 12, 2017, 10:03 PM), http://abcnews.go.com/Politics/trump-threatens-undermine-obamacare-democrats-negotiate/story?id=46764709.
[5] The letter to Secretary Price is available at https://www.casey.senate.gov/newsroom/releases/senators-demand-trump-administration-release-secret-plan-to-undermine-health-care-system-that-was-presented-to-house-freedom-caucus.

discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email** accounts. Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[6] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.**[7]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered OMB's prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[8] Furthermore, agencies that have adopted the National Archives and **Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but OMB's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that OMB use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

---

[6] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955–56 (D.C. Cir. 2016).

[7] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

[8] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

3

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[9] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[10] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[11] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[12]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[13] Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, OMB is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and OMB can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on rolling basis.

---

[9] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).
[10] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).
[11] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).
[12] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).
[13] *Mead Data Central*, 566 F.2d at 261.

Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 5 C.F.R. § 1303.70, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way.[14] Moreover, the request is primarily and fundamentally for non-commercial purposes.[15]

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding" of government."[16] On March 24, 2017, House Republican leaders pulled their proposal to "repeal and replace" the ACA after failing to gather enough support to pass the proposal.[17] Although efforts to pass health care reform legislation continue, the ACA remains in effect. Given that the ACA remains the law of the land, the public has both a need and a right to know how the Trump administration is planning to regulate the current health care system under applicable law.

This request is primarily and fundamentally for non-commercial purposes.[18] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight will use the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight will also make materials it gathers available on our public website and promote their availability on social media platforms, such as Facebook and Twitter.[19] One example of American Oversight's demonstrated public disclosure of documents and creation of editorial content is in its recently launched "Audit the Wall" effort, where the organization is gathering and analyzing information and commenting on public releases of information related to the administrations proposed construction of a barrier along the U.S.-Mexico border.

Accordingly, American Oversight qualifies for a fee waiver.

---

[14] 5 C.F.R. § 1303.70.
[15] 5 C.F.R. § 1303.70.
[16] 5 C.F.R. § 1303.70.
[17] DeBonis et al., *supra* note 2.
[18] 5 C.F.R. § 1303.70.
[19] American Oversight currently has over 10,800 page likes on Facebook, and over 32,200 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited May 1, 2017); American Oversight (@weareoversight), TWITTER (last visited May 1, 2017).

Application for Expedited Processing

Pursuant to 5 U.S.C. § 552(a)(6)(E)(i) and 5 C.F.R. § 1303.10(d), American Oversight requests that OMB expedite the processing of this request.

I certify to be true and correct to the best of my knowledge and belief, that there is an urgent need to inform the public about the federal government activity that is the subject of this request. On March 24, 2017, House Republican leaders pulled their proposal to "repeal and replace" the Affordable Care Act.[20] Given Mr. Trump's well-known hostility toward the ACA, there is an urgent need for the public to understand how the Trump Administration is regulating the health care system under the current law. The information sought in this request will meaningfully further public discourse on this issue of national concern.

I further certify that American Oversight is primarily engaged in disseminating information to the public. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. Similar to other organizations that have been found to satisfy the criteria necessary to qualify for expedition,[21] American Oversight "'gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'"[22] American Oversight will use the information gathered, and its analysis of it, to educate the public through reports, press releases, and other media. American Oversight will also make materials it gathers available on its public website and promote their availability on social media platforms, such as Facebook and Twitter.[23] One example of American Oversight's demonstrated public disclosure of documents and creation of editorial content is in its recently launched "Audit the Wall" effort, where the organization is gathering and analyzing information and commenting on public releases of information related to the administrations proposed construction of a barrier along the U.S.-Mexico border.

Accordingly, American Oversight's request satisfies the criteria for expedition.

Conclusion

We share a common mission to promote transparency in government. American Oversight looks forward to working with your agency on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records,

---

[20] DeBonis et al., *supra* note 2.

[21] *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30–31 (D.D.C. 2004); *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

[22] *ACLU*, 321 F. Supp. 2d at 29 n.5 (*quoting EPIC*, 241 F. Supp. 2d at 11).

[23] American Oversight currently has over 10,800 page likes on Facebook, and over 32,200 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited May 1, 2017); American Oversight (@weareoversight), TWITTER (last visited May 1, 2017).

please contact Sara Creighton at foia@americanoversight.org or (202) 869-5246. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

        Sincerely,

        Austin R. Evers
        Executive Director
        American Oversight