# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-1448 (ABJ) |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

Plaintiff, American Oversight, submitted a request to the Department of Health and Human Services ("HHS") and the Office of Management and Budget ("OMB") under the Freedom of Information Act, 5 U.S.C. § 552, seeking communications from the agencies to Members of Congress and Congressional staff about potential administrative actions related to the implementation of the Affordable Care Act. Compl. [Dkt. # 1] ¶¶ 10–11. Plaintiff sued the agencies arguing, among other things, that the agencies withheld or redacted records without justification, and that it failed to adequately search for responsive records. *Id.* ¶¶ 44–55.[1] The agencies moved for summary judgment, and plaintiff opposed the motion and filed its own motion for summary judgment.

Because the Court finds that the agencies improperly redacted and mislabeled responsive information as "non-responsive records," and that they improperly invoked Exemption 5 to

---

1 Since filing its complaint, plaintiff has withdrawn its challenge to the adequacy of defendants' searches. *See* Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J. & in Opp. to Defs.' Mot. [Dkt. # 16-1] ("Pls.' Cross-Mot.") at 1 n.1. Additionally, plaintiff does not challenge "OMB's withholding of a draft letter to the President." *Id*.

withhold the agencies' emails with Congress, it will deny defendants' motion for summary judgment and grant plaintiff's cross-motion. Defendants are ordered to produce responsive records consistent with this opinion.

## BACKGROUND

Plaintiff American Oversight "is a nonpartisan, nonprofit . . . organization committed to the promotion of transparency in government." Compl. ¶ 6. On May 4, 2017, it sent identical FOIA requests to HHS and OMB seeking the following two categories of records:

> 1. A copy of any letter or memorandum sent on or about March 23, 2017 to Congressional republicans outlining potential regulatory actions related to the Affordable Care Act. The requested record was referenced in an April 4, 2017 letter from 21 Senators to Secretary Tom Price.
>
> 2. Any other communications from [the agencies] to any member of Congress or congressional staff concerning potential administrative actions relating to implementation of the Affordable Care Act.

Ex. A to Compl., HHS FOIA [Dkt. # 1-1]; Ex. B to Compl., OMB FOIA [Dkt. # 1-2] (collectively, "FOIA Requests"). The timeframe of the requests was from March 6, 2017, to the date of the agencies' searches. *Id.* at 2. Plaintiff explained in its letters that it was interested in this information due to stalled legislative efforts in Congress to "repeal and replace" the Affordable Health Care Act ("ACA"), and subsequent reports that the "Trump administration [planned] to take administrative actions that would affect the operation of the ACA," including the repeal of regulations. *Id.* at 1–2.

Plaintiff filed this suit on July 20, 2017, and the agencies began making rolling productions in November 2017. Status Report & Proposed Processing Schedule [Dkt. # 6] at 1. By February 2018, both agencies had completed their productions. Joint Status Report [Dkt. # 13] at 1.

The agencies moved for summary judgment on April 9, 2018, *see* Defs.' Mot. for Summ. J. [Dkt. # 14]; Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 14-1] ("Defs.' Mem."), and plaintiff

opposed that motion and filed a cross-motion for summary judgment. Pl.'s Cross-Mot. at Summ. J. [Dkt. # 16]. Those motions are fully briefed and ripe for decision. *See also* Mem. of P. & A. in Opp. to Pl.'s Mot. For Summ. J. & in Reply in Supp. of Defs.' Mot. [Dkt. # 20] ("Defs.' Reply"); Reply in Supp. of Pl.'s Cross-Mot. for Summ. J. [Dkt. # 22] ("Pl.'s Cross-Reply").

**STANDARD OF REVIEW**

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must "show that [the] requested material falls within a FOIA exemption." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

**I.     The agencies improperly redacted email chains as "non-responsive records."**

In *American Immigration Lawyers Association v. Executive Office for Immigration Review* ("*AILA*"), the D.C. Circuit held that the FOIA "statute does not provide for withholding responsive but non-exempt records or for redacting nonexempt information within responsive records." 830 F.3d 667, 677 (D.C. Cir. 2016). Therefore, "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Id.*, citing 5 U.S.C. § 552 (a)(3)(A). This means that unless information within a record can be withheld by invoking one of the narrowly construed FOIA exemptions, a responsive record must be produced in its entirety.

However, the question of "what constitutes a record" was not raised by the parties in *AILA*, and the Court found "no cause to examine the issue." *Id.* at 678. It noted that the FOIA statute does not define the term, and that "agencies . . . in effect define a 'record' when they undertake the process of identifying records that are responsive to a request." *Id.* Therefore, it appears that what is deemed "responsive to the request" should dictate what constitutes the record.

Here, defendants contend that they properly redacted large portions of the agencies' email chains based on their definition of what would constitute a "record." Defs.' Mem. at 9–13. Rather

than treating entire email chains as a "record," defendants took a narrower approach and defined a "record" to be each individual email in the chain "based on whether the author was an official at one of the agencies." Defs.' Reply at 3. The practical effect of this approach is that when an agency employee replied to an email emanating from Congress and the previous exchanges were included in the response, defendants redacted from the thread any email that was authored by Congress on the grounds that it was a "non-responsive record." *See, e.g.*, Ex. 3 to Pl.'s Cross-Mot. [Dkt. # 16-6] ("HHS FOIA Production"); Ex. 4 to Pl.'s Cross-Mot. [Dkt. # 16-7] ("OMB FOIA Production"). Defendants insist that their approach is justified because plaintiff's request "sought only emails from *the agencies*, not emails from Congress or back-and-forth exchanges between Congress and the agencies," therefore, "[e]mails from Congress . . . were not responsive to the requests, and the agencies did not produce them." Defs.' Mem. at 9 (emphasis in original).

Plaintiff challenges those redactions on two grounds: first it argues that the "redacted material is itself responsive" to the FOIA requests because "when the agency staffers sent the emails at issue to Congress, they opted to include prior email exchanges as in-line text within those communications," Pl.'s Cross-Mot. at 5; and second, it contends that "the redacted material is, at a minimum, part of a responsive record, and FOIA does not permit redactions within a responsive record based solely on the determination that portions of the record are non-responsive." *Id.*

Defendants maintain that their approach is driven by the language of the request, which called for:

> [C]ommunications *from* [the agencies] to any member of Congress or congressional staff concerning potential administrative actions relating to implementation of the Affordable Care Act.

FOIA Requests at 2 (emphasis added). According to defendants, the request is limited on its face to emails authored by agency personnel. Defs.' Mem. at 11. Plaintiff insists that a plain interpretation of the request requires the agencies to produce anything that was sent or contained

5

in an email from the agencies, including the prior exchanges that prompted the particular email at the top of the chain. Pl.'s Cross-Mot. at 5. Plaintiff points out that if the agencies wished to reply to Congress without including prior communications, they could have easily composed a brand new email or changed their email settings. *Id.* at 7–10.

The Court finds defendants' approach to be unduly literal and stingy, and it agrees that plaintiff's position is more consistent with the day-to-day reality of electronic communication as well as the general legal principles to be applied in FOIA cases. While plaintiff could have been more clear in framing its request, it is commonly understood that an email chain operates as a single record. The very nature of a "reply" – as opposed to a "new message" – necessarily implies that the communication is responsive to the message that came before, and therefore it incorporates what came before, and the two form a unified exchange.[2] Indeed, in many instances, a reply email ("I agree." "No." or "LOL") simply cannot be understood without reference to the previous message. Thus, the prior messages received from Congress not only appear physically within the agencies' outgoing emails, but they were incorporated into the agencies' communications. Whether that was a conscious or subconscious choice is irrelevant; what matters is that the emails sent by agency personnel did in fact contain the prior exchanges with Congressional staff.[3] Thus, the Court finds that the FOIA request covers the redacted information so long as it was included

---

2 *See* Merriam-Webster Dictionary, "Reply (noun) 1: something said, written, or done in answer or response," https://www.merriam-webster.com/dictionary/reply.

3 The Court is aware of the Department of Justice's guidance which permits agencies to define a "record" as "an entire string of emails, a single email within a string of emails, or a paragraph within a single email," depending on the "topic of the request." *See* OIP Guidance: Defining a "Record" Under the FOIA, Dep't of Justice, (updated Feb. 15, 2017), https://www.justice.gov/oip/oip-guidance/defining_a_record_under_the_foia. Since the emails withheld fall within the "topic of the request," defendants' definition of the record was impermissible narrow.

as in-line text in the agencies' sent emails, regardless of whether the agency authored each email in the chain.[4]

## II. The redacted emails do not qualify as "intra-agency" communications under Exemption 5.

Next, plaintiff challenges defendants' reliance on Exemption 5 to withhold responsive records on the ground that they are protected under the deliberative process privilege. Pl.'s Cross-Mot. at 18–40. FOIA Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). A document may be properly withheld under Exemption 5 only if: (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The exemption encompasses "protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981).

---

4     The Court is in agreement with plaintiff's description of what it *is* and *is not* entitled to under the FOIA request:

> [I]f the search returned, for example, four separate emails – an initial email from the agency to Congress; a reply email from Congress including the initial email as in-line text; a response from the agency including both preceding emails; and a final reply from Congress including all three prior emails – in [p]laintiff's view, only the first and third documents would be responsive communications to Congress, but there would be no basis for redacting the content of Congress's response contained within the body of the third communication based on a responsiveness determination.

Pl.'s Cross-Mot. at 13 n.5.

The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." *Klamath*, 532 U.S. at 2, citing *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9, quoting *Sears*, 421 U.S. at 151. To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Defendants argue that the agencies properly withheld the agencies' communications with Congress under Exemption 5 because they "were exchanged as part of the agencies' deliberations about the range of possible administrative actions related to health care reform and their assessment of which particular actions to take." Defs.' Reply at 12. The HHS declarant avers:

> HHS personnel discussed potential options with congressional staff for how HHS might implement its new authority if Congress were to pass healthcare legislation. These predecisional discussions were part of a broader decision-making process at HHS by which agency staff evaluated how Congress might view or react to future HHS administrative or regulatory action regarding health care reform. In addition, hearing potential ideas from members of Congress and congressional staff working to enact healthcare reform was important to the former Secretary and influenced decisions at HHS by helping the agency understand broader congressional perspectives about how healthcare reform might be implemented in terms of administrative action.

Decl. of Sarah Arbes [Dkt. # 14-3] ("Arbes Decl.") ¶ 9.

Similarly, the OMB declarant avers:

> The record released in part is an email message exchanged between OMB staff and congressional staff. The information withheld from that email is

> pre-decisional because it was generated prior to agency decision-makers arriving at a final decision or taking a final action with regard to potential regulatory actions regarding health care. Specifically, the record was generated as OMB and other agencies were preparing assessments of possible regulatory actions the Administration could take, a process in which the Administration solicited and welcomed input from Congress. The withheld information in this record is deliberative because it reveals details of the process for undertaking that assessment and preliminary options related to the assessment.

Decl. of Heather Walsh [Dkt. # 14-4] ("Walsh Decl.") ¶ 20.

Plaintiff contends that defendants have failed to meet Exemption 5's threshold requirement: that the material constitute "inter-agency" or "intra-agency communications." Pl.'s Cross-Mot. at 18–37. It argues that the communications with Congress fall outside the scope of Exemption 5 because Congress is not an "agency," *id.* at 20, and it adds that Congress does not qualify as an outside consultant because "[it] was not providing neutral expert advice, but rather was representing its own interests." *Id.* at 22–26, 28–29.

With respect to plaintiff's first point, the fact that the communications involved individuals who were outside of the agencies does not mean that they are categorically excluded from coverage by the privilege. The D.C. Circuit has "interpreted the phrase 'intra-agency' . . . to go beyond the text and include U.S. agency records authored by *non*-agency entities if those records were solicited by a U.S. agency in the course of its deliberative process." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201 (D.C. Cir. 2014), citing *McKinley v. Board of Governors of the Federal Reserve System,* 647 F.3d 331, 336 (D.C. Cir. 2011) (emphasis in original). This is commonly referred to as the "consultant corollary" to Exemption 5. *Id.*

The Supreme Court discussed the consultant corollary exception at length in its 2001 opinion in *Klamath.* 532 U.S. 1, 9–12. The Court observed that, "[a]lthough Exemption 5's terms

and the statutory definitions say nothing about communications with outsiders, some Courts of Appeals have held that a document prepared for a Government agency by an outside consultant qualifies as an 'intra-agency' memorandum," when "the records submitted by outside consultants played essentially the same part in an agency's deliberative process as documents prepared by agency personnel." *Id.* at 2–3. Critically, the Court noted that the justification for this approach

> is that the consultant does not represent *its own interest*, or the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects it functions just as an employee would be expected to do.

*Id.* at 3 (emphasis added). The Court emphasized that the first condition for the applicability of the privilege – an "inter" or "intra" agency communication – "is no less important than the second," *id.* at 9, and that "[t]here is no textual justification for draining that condition of independent vitality." *Id.* at 3.

Defendants' declarations in support of their motion for summary judgment fail to establish the "inter" or "intra" agency requirement of Exemption 5, because they do not address whether the outside consultants – the Congressional representatives and staffers – advised the agencies in a self-interested manner or whether their "only obligations [were] to truth and [a] sense of what good judgment calls." *Klamath*, 532 U.S. at 3.

Indeed, defendants do not deny that the Congressional offices with which they communicated on a range of possible administrative health care reforms may have had their own interests. Defs.' Reply at 16. Plaintiff points to evidence in the record that supports this conclusion. *See* Pl.'s Cross-Rely at 6; Ex. 3 to Pl.'s Cross-Mot. [Dkt. # 16-6] at HHS 2017-00722-00088 (email exchange between HHS and Senator John Cornyn's office regarding a "Texas 1115 Waiver."); Ex. 5 to Cross-Reply [Dkt. # 22-2] at HHS 2017-007722-00084 (email titled "IL

10

Delegation letter" confirming that HHS is "preparing a letter now that will confirm some flexibility [Centers for Medicare & Medicaid Services] has at the state level to help IL").

The agencies maintain, however, that there is no "requirement that a non-agency lack an independent interest in order for its communications with an agency to fall within Exemption 5." Defs.' Reply at 16. They cite *Ryan v. DOJ*, 617 F.2d 781 (D.C. Cir. 1980), a case that predates the Supreme Court's decision in *Klamath*. Defendants note that in *Ryan*, "senators unquestionably had their own views and interests with respect to 'their procedures for selecting and recommending potential [judicial] nominees,'" but nonetheless, the D.C. Circuit held that the survey responses they submitted to DOJ were protected under Exemption 5. Defs.' Reply at 16, citing 617 F.2d at 784. Defendants also cite *Public Citizen Inc. v. DOJ*, a case in which the D.C. Circuit stated that the "potential for an adversary relationship is not enough to negate one of consultation," when it held that former Presidents' communications with the National Archives and Records Administration were covered by Exemption 5. 111 F.3d 168, 171–72 (D.C. Cir. 1997).

Defendants' descriptions of *Ryan* and *Public Citizen* are accurate, but they ignore the important fact that the *Klamath* Court singled out both opinions as "arguably extend[ing] beyond" typical examples of the consultant corollary. 532 U.S. at 12 n.4; *see also Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 685 (D.C. Cir. 2008) ("*NIMJ*") (acknowledging the Supreme Court's concerns that the "peculiar facts" of *Ryan* and *Public Citizen* may have exceeded the scope of Exemption 5, specifically because "the potential self-interests of the 'consultants'").

And since *Klamath,* the D.C. Circuit has consistently reiterated the principle that the outside consultant must be a neutral party who is not representing its own interests. In *NIMJ*, the D.C. Circuit held that the experts DOD consulted were covered by Exemption 5 because they "had no individual interests to promote in their submissions." 512 F.3d at 683. In *McKinley*, the D.C.

11

Circuit held that the Federal Reserve Bank of New York – a non-agency – acted as an outside consultant to the Federal Reserve System ("Board") – an agency – because it "[did] not represent an interest of its own, or the interest of any other client, when it advise[d] the [Board]." 647 F.3d at 337 (alterations in original). Finally, in *Public Employees for Environmental Responsibility*, the Court observed "[i]n the wake of *Klamath*, we have confined the consultant corollary to situations where an outside consultant did not have its own interests in mind." 740 F.3d 195, 201–02 (D.C. Cir. 2014), citing *McKinley*, 647 F.3d at 336–37. Thus, it appears that the law in this Circuit does require that outside consultants "lack an independent interest."[5]

At the end of the day, the point of the deliberative process privilege is to foster candid communication within the agency, and the consultant corollary simply recognizes that on some occasions, outsiders may stand in the shoes of fellow agency employees, when they have been specifically asked to provide input from a neutral perspective. Here, putting aside the narrow legal question of whether the mere existence of some independent interest in the topic on the part of the outsider is disqualifying, the record does not support a finding that the communications with Congress "played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel." *Klamath*, 532 U.S. at 10. The declarations make it clear that the

---

5  Defendants point out that in *Klamath*, the Court did not disavow consultants' self-interests generally, but rather held that "a non-agency cannot be a 'self-advocate[ ] at the expense of others seeking benefits inadequate to satisfy everyone.'" Defs.' Reply at 16, quoting 532 U.S. at 12. But even under that standard, defendants have failed to meet their burden because their declarations do not address the question of the Congressional offices' self-interest at all. *See* Decl. of Michael Marquis [Dkt. # 14-2] ¶ 23; Arbes Decl. ¶¶ 8–11, Walsh Decl. ¶¶ 19–21.[5] Instead the declarations are focused on the deliberative and predecisional aspects of their communications, ignoring the admonition in *Klamath* that the "first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency.'" 532 U.S. at 9, citing 5 U.S.C. § 552(b)(5).

agency found the "perspective" useful and potentially influential, Defs.' Mem. at 24–25, but that is not the sort of input *Klamath* had in mind. 532 U.S. at 10–11.

Accordingly, the Court holds that the redacted emails do not qualify as "intra-agency" communications under Exemption 5, and the agencies must produce the responsive materials. Since the threshold requirement of Exemption 5 is not satisfied, the Court need not address the question of whether the material is both "predecisional" and "deliberative."

## CONCLUSION

For the reasons stated, the Court will deny defendants' motion for summary judgment, [Dkt. # 14], and it will grant plaintiff's cross-motion for summary judgment. [Dkt. # 16]. A separate order will issue.

*[signature]*

AMY BERMAN JACKSON
United States District Judge

DATE: March 30, 2019